UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEROY HARRIS,

    Petitioner,                                   Case Number 2:12-CV-14210
                                                     Honorable Patrick J. Duggan

WILLIE SMITH,

    Respondent.
_____/

**<u>OPINION AND ORDER (1) GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 8]; (2) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS; (3) DENYING A CERTIFICATE OF APPEALABILITY; AND (4) DENYING AS MOOT PETITIONER'S MOTION FOR EVIDENTIARY HEARING [ECF No. 11], MOTIONS FOR LEAVE TO AMEND PETITION [ECF NOS. 12 &14], AND MOTION TO APPOINT COUNSEL [ECF NO. 13]</u>**

      Petitioner Leroy Harris is serving a mandatory life sentence as a result of his 1989 conviction for first-degree murder in the Circuit Court for Washtenaw County, Michigan. Petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction on five grounds: (1) newly-discovered evidence proves that Petitioner is actually innocent; (2) the trial court erroneously instructed the jury that Petitioner could be found guilty under an aiding and abetting theory; (3) Petitioner was deprived of the effective assistance of counsel; (4) minorities were systematically excluded from Petitioner's jury; and (5) the procedural bar the state courts applied to Petitioner's claims is not adequate

to bar habeas review. Respondent has filed a motion for summary judgment, asserting that the petition was filed after expiration of the applicable one-year statute of limitations. The Court agrees and finds that the petition was not timely filed. The Court also is denying Petitioner a certificate of appealability and denying as moot his pending motions.

## I. Factual and Procedural History

In May 1989, Petitioner was found guilty of first-degree murder after a jury trial in the Washtenaw County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1); *see also Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> At trial, Vincent Butler testified that his aunt, Susan Demmons, told him that she wanted Louis Jefferson killed. She offered one hundred dollars to anyone who killed Jefferson. Butler asked defendant if he wanted to kill Jefferson since defendant had earlier told Butler he wanted to kill someone. Butler and defendant then picked up Jefferson at his home. Butler drove the car, stopped, and pulled a gun on Jefferson. Defendant, who was seated in the back of Butler's car, shot Jefferson. Butler then pulled Jefferson out of the car and defendant shot him again. Defendant and Butler went back to Demmons' house and she washed Butler's clothes. Defendant put his gun behind a restaurant's dumpster. The two men then pushed the car into a lake after breaking the steering column to make the car look like it had been stolen. Butler testified that defendant received one hundred dollars from Demmons.

*People v. Harris*, No. 120229 (Mich. Ct. App. July 13, 1992). Absent from this

summary is the fact that Petitioner gave a detailed confession to the police, admitting that he shot the victim twice and helped dispose of the body and car.

Petitioner filed a direct appeal which ended when the Michigan Supreme Court denied his application for leave to appeal on December 30, 1992. *People v. Harris*, 441 Mich. 908, 496 N.W.2d 290 (1992) (table).

In December 1993, Petitioner filed a motion for new trial in the state court, claiming that new evidence established his innocence. Specifically, Petitioner presented statements from four witnesses who he claimed were unavailable to testify at trial: Geri Georgiadis, April Morris, Stephanie Bryant, and LaDonna Young. The trial court conducted a motion hearing and then issued a brief order denying the motion on January 25, 1994.

Claiming his post-conviction counsel failed to timely appeal this order, Petitioner filed a *pro se* delayed application for leave to appeal with the Michigan Court of Appeals in December 1997. On April 8, 1998, the court issued an order dismissing the application as untimely. *People v. Harris*, No. 207089 (Mich. Ct. App. April 8, 1998). Petitioner did not seek leave to appeal this order to the Michigan Supreme Court.

On November 3, 2010, Petitioner filed a motion for relief from judgment in the trial court. The trial court denied this motion on January 3, 2011. Petitioner

filed a delayed application for leave to appeal in the Michigan Court of Appeals, which the court denied on November 8, 2011. *People v. Harris*, No. 305537 (Mich. Ct. App. Nov. 8, 2011). Petitioner's application for leave to appeal in the Michigan Supreme Court was denied by the Court on June 25, 2012. *People v. Harris*, 491 Mich. 942, 815 N.W.2d 487 (2012) (table).

Petitioner filed the instant habeas petition on September 21, 2012.

## II. Applicable Standard

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Sanders v. Freeman*, 221 F.3d 846, 851 (6th Cir. 2000) (quoting Fed. R. Civ. P. 56(c)). "To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable factfinder could return a verdict in his favor." *Id.* The summary judgment rule applies to habeas proceedings. *See* R. 12 of the Rules Governing § 2254 Cases.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a one year statute of limitations applies to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. The one year limitations

period runs from the latest of:

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). A petition for writ of habeas corpus must be dismissed where it has not been filed within the one year statute of limitations. See *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1187 (E.D. Mich. 2001).

## III. Analysis

Petitioner's habeas application was clearly filed after expiration of the limitations period. Petitioner's conviction became final prior to the effective date of the AEDPA. Habeas applicants in his position were given a one-year grace period from the statute's enactment to file their habeas petitions. *See McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir. 2003) (citing *Austin v. Mitchell*, 200 F.3d 391, 393 (6th Cir. 1999)). Petitioner therefore had until April 24, 1997 to file his

habeas petition, or at a minimum, to initiate a "*properly filed* application for state post-conviction relief or other collateral relief" to toll the limitations period. 28 U.S.C. § 2244(d)(2) (emphasis added).

Petitioner's 1997 untimely application for leave to appeal the denial of his motion for new trial did not toll the limitations period. An untimely state court appeal does not constitute a "properly filed" application under § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 414, 125 S. Ct. 1807, 1812 (2005) (internal quotation marks and citation removed) ("When a post-conviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).").

Petitioner did not initiate a properly filed application for post-conviction review in the state courts until he filed his motion for relief from judgment in November 2010, over thirteen years after the AEDPA's grace period expired. Although § 2244(d)(2) provides that the one-year statute of limitations is tolled while a duly filed petition for state collateral review is pending, the tolling provision does not "revive" the limitations period. *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001).

Petitioner's reply to Respondent's motion does not challenge these calculations. Rather, Petitioner asserts that his petition is not subject to the statute

of limitations at all because he is actually innocent. The AEDPA statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, – U.S. –, 130 S. Ct. 2549, 2560 (2010). A petitioner may be eligible for equitable tolling if he demonstrates a credible claim of actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013); *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005). Because equitable tolling is used "sparingly" by the federal courts, the party seeking to toll the limitations period bears the burden of proving entitlement to it.

"[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 133 S. Ct. at 1928 (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 868 (1995)). To satisfy this standard, a petitioner must present "'new reliable evidence.'" *House v. Bell*, 547 U.S. 518, 537, 126 S. Ct. 2064, 2077 (2006) (quoting *Schlup*, 513 U.S. at 324, 115 S. Ct. at 865). Based on all the evidence, both old and new, "the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id*. at 538, 126 S. Ct. at 2077 (quoting *Schlup*, 513 U.S. at 329, 115 S.

Ct. at 868). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id*. Furthermore, untimeliness "bear[s] on the credibility of evidence proffered to show actual innocence." *McQuiggin*, 133 S. Ct. at 1936. Thus, "a federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." *Id*. at 1928.

Petitioner has not met this exacting standard to show that he has a meritorious actual-innocence gateway claim. Petitioner presents four witness statements. First, the affidavit and transcribed statement of Geri Georgiadis, dated March 25, 1993, states that Vincent Butler admitted to her that he killed a man around the time Jefferson was murdered. She also states that Butler said that Petitioner was present during the killing but did not participate in it.

Petitioner also relies on what appears to be an October 11, 1993 transcript of a statement made by one April Morris to an attorney representing Petitioner. Morris stated that while she was in prison serving time for armed robbery, she shared a cell with Susan Demmons. Demmons told Morris about her case and that her nephew (i.e., Butler) fired the shots. Demmons did not tell Morris whether she

was present at the scene of the shooting or where she obtained her information.

Next, a hand-written statement by Stephanie Bryant, dated May 16, 1993, states that in the Summer of 1991, she was at her home with friends when Butler told her that he was a hit-man. Bryant states that she believes Petitioner is innocent and was set-up by Butler.

Finally, a type-written statement by LaDonna Young, dated March 23, 1991, states that Todd Mite, Butler's cousin, told Young that Butler is a hit man. Young also states that she heard Butler say that he would never do time because his "suckers" do it for him. Butler told Young that Petitioner was doing time for a crime Butler committed.

Even assuming that these four individuals testified in court consistent with their statements, Petitioner has not overcome the heavy burden of showing that "in light of the new evidence, no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin, supra*. While the proffered testimony would certainly aid the defense theory that Petitioner was set-up by Butler, it would not compel a reasonable juror to acquit him. The prosecutor's case was not built on Butler's testimony alone.

Significantly, Petitioner made a statement to police implicating himself in the murder. Petitioner told police that on the night of the murder Butler asked him

if he would help murder Jefferson. (5/17/89 Trial Tr. at 120.) Petitioner admitted that he and Butler then drove in Butler's car and picked up the victim. (*Id*.) Petitioner told the police that Butler then drove the victim to a field and got out of the car holding a gun. (*Id*.) Petitioner also had a gun and put it to the back of the victim's neck. (*Id*.) Petitioner admitted that as Butler circled around the back of the car, Petitioner's gun discharged and shot the victim in the neck. (*Id*.) Butler then dragged the victim out of the car, and he asked Petitioner whether the victim was dead. (*Id*. at 120-21.) Petitioner got out of the car and shot the victim again in the head. (*Id*. at 121.) Petitioner went on the describe how he and Butler dumped the car into a river. (*Id*.)

Another witness at Petitioner's trial, Albert Taylor, testified that he saw Butler and Petitioner after the time of the murder at a Stop-n-Go store. (5/18/89 Trial Tr. at 193.) Taylor testified that Butler and Petitioner asked him for a ride because Butler's car had been damaged. (*Id*.) Taylor also testified that on the way to drop off Petitioner, Petitioner showed him a .32 caliber revolver. (*Id*. at 195-96.)

In light of Petitioner's confession and the other evidence introduced at his trial, the fact that four people– years after the event– seek to implicate Butler for the murder, hardly presents a compelling claim of actual innocence. Long-delayed

statements are viewed with extreme suspicion. *See Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x 528, 531-32 (11th Cir. 2009) (finding that affidavits from fellow inmates and family members created after trial are not sufficiently reliable evidence to support a claim of actual innocence); *see also Herrera*, 506 U.S. at 423, 113 S. Ct. at 872 ("It seems that, when a prisoner's life is at stake, he often can find someone new to vouch for him"). Petitioner simply fails to demonstrate that, in light of the new evidence, no reasonable juror would have voted to find him guilty beyond a reasonable doubt. It would certainly be reasonable for jurors to reject the new statements in light of Petitioner's confession to police.

As such, the Court rejects Petitioner's actual innocence argument to avoid the AEDPA's statute of limitations and concludes that his petition is untimely under 28 U.S.C. § 2244(d). Thus the Court must dismiss his petition. Petitioner's pending motions seeking to amend the legal claim made in his petition, for an evidentiary hearing, and for the appointment of counsel therefore are denied as moot.

### IV. Certificate of Appealability

Before Petitioner may appeal, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85, 120 S. Ct. 1595, 1604 (2000). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*. Having undertaken the requisite review, the Court concludes that jurists of reason could not find the Court's procedural ruling that the petition is untimely debatable.

Accordingly,

**IT IS ORDERED**, that Respondent's motion for summary judgment (ECF No. 8) is **GRANTED**;

**IT IS FURTHER ORDERED**, that Petitioner's application for a writ of habeas corpus is **DENIED**;

**IT IS FURTHER ORDERED**, that Petitioner's motion for an evidentiary hearing (ECF No. 11), motions for leave to amend petition (ECF Nos. 12, 14), and motion for appointment of counsel (ECF No. 13) are **DENIED AS MOOT**;

**IT IS FURTHER ORDERED**, that Petitioner is denied a certificate of appealability.

Dated: July 25, 2013                               s/PATRICK J. DUGGAN
                                                   UNITED STATES DISTRICT JUDGE

Copies to:
Leroy Harris
#201879
Muskegon Correctional Facility
2400 S. Sheridan
Muskegon, MI 49442

AAG Laura Moody
AAG Raina Korbakis

-13-